IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MOHAMMED HUSSAIN,

                Plaintiff,                    OPINION AND ORDER

v.

                                              18-cv-00529-wmc

ASCENSION SACRED HEART-ST MARY'S HOSPITAL, Inc.,

                Defendant.

Dr. Mohammed Hussain filed this suit against Ascension Sacred Heart - St. Mary's Hospital, alleging defamation and negligence. In answering the complaint, Ascension asserted a counterclaim alleging that Hussain breached his contract with the hospital when he (1) refused to execute a release of claims against the hospital and (2) initiated the present lawsuit. Presently before the court is plaintiff's motion to dismiss the counterclaim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss (dkt. #17) 1.) For the reasons stated below, that motion will be denied. Also before the court is defendant's motion for the sanction of dismissal and fees following plaintiff's failure to appear for his deposition in Wisconsin on April 16, 2019. As discussed below, that motion will also be largely denied.

OPINION

I. Plaintiff's Motion to Dismiss the Counterclaim

A motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency. *See* Fed. R. Civ. P. 12(b)(6). Dismissal is warranted only if no recourse could be granted under any set of facts consistent with the allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). To survive a

motion to dismiss, a plaintiff must allege sufficient facts to state a plausible claim for relief. *Spierer v. Rossman*, 789 F.3d 502, 510 (7th Cir. 2015) (citing *Twombly*, 550 U.S. at 570). The same standard applies to a motion to dismiss a counterclaim. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826-27 (7th Cir. 2015).

Because subject matter jurisdiction is based on diversity of citizenship in this case, the court looks to the law of Wisconsin to determine which state's law should be applied.[1] *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 497 (1941); *Nichols v. National Union Fire Insurance Co.*, 509 F. Supp. 2d 752, 756 (W.D. Wis. 2007). Since neither party raises a conflict of law issue, and the case was filed in federal court in Wisconsin, the court will apply Wisconsin law. *RLI Insurance Company v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.").

To overcome a motion to dismiss, a claim or counterclaim for breach of contract under Wisconsin law must allege: (1) a valid contract exists; (2) the defendant breached the contract; and (3) damages stemmed from that breach. *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 553 (7th Cir. 2008) (citing *N.W. Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 187 N.W.2d 200 (1971)). There is no dispute that the parties had a valid contract. (*See* Mot. to Dismiss Br. (dkt. #18) 8; Opp'n (dkt. #27) 9.) So, the only questions are whether

---

[1] In his complaint, plaintiff alleges that he "resides in Maryland." (Compl. (dkt. #1) ¶ 3.) For an individual person, it is his "domicile," rather than his residence, that controls for diversity purposes. *See Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 867 (7th Cir. 2012) ("An allegation of residence is not sufficient to establish citizenship, which requires domicile."). A person's domicile is "the state in which a person intends to live over the long run." *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). As such, a person may have several residences, but only one domicile. *Id.* The court will nevertheless assume that plaintiff intended to plead that he is *domiciled* in Maryland. If the court is mistaken, plaintiff is dutybound to clarify this point.

defendant's counterclaim has adequately alleged a breach causing damages.

Defendant alleges that when Dr. Hussain completed the Statement of Application for Appointment to St. Mary's Hospital's Medical Staff, he agreed to "acknowledge and abide by any Medical Staff Bylaws requirement for release and immunity from civil liability." (Ans. (dkt. #15) 16.) In support, Ascension provided a copy of Hussain's Application and full copy of the Hospital's Medical Bylaws.[2] Section 7.1 of the Bylaws, titled "Immunity from Liability," states, in relevant part:

> The following shall be conditions to any individual's application for Medical Staff membership or exercise of clinical privileges at the Hospital:
>
> \* \* \*
>
> (c) there shall, to the fullest extent permitted by law, be absolute immunity from civil liability arising from such act, communication, report, recommendation, or disclosure, even where the information involved would otherwise be deemed privileged;
>
> (d) such immunity shall apply to all acts, communications, reports, recommendations, or disclosures performed or made in connection with this or any other health care institution's activities related but not limited to:
>
> > (1) applications for appointment or clinical privileges;
> >
> > \* \* \*
> >
> > (5) medical care evaluations
> >
> > \* \* \*
>
> (f) in furtherance of the foregoing, each individual shall, upon request of the Hospital, execute releases in accordance with the tenor and import of this Section . . . . Execution of such

---

[2] Documents attached to a pleading are part of the pleading "for all purposes." Fed. R. Civ. P. 10(c).

3

releases is not a prerequisite to the effectiveness of this Section.

(Bylaws (dkt. #15-2) 4-5.)

Defendant alleges that Dr. Hussain breached Section 7.1 of ~~this agreement~~the Bylaws on two occasions: (1) by refusing to execute a release of claims against the hospital on September 18, 2018; and (2) by bringing suit in the case against the hospital for defamation and negligence related to medical care evaluations. (Ans. (dkt. #15) 18-19.) As a result of that breach, Ascension alleges that it incurred damages, "including but not limited to attorney's fees and costs in defense of the litigation." (*Id.* at 19.) Accordingly, Ascension has adequately pled all elements of a breach of contract claim.

Nevertheless, plaintiff argues in his motion to dismiss that he did not breach the contract in either way alleged by Ascension. In support, plaintiff makes two contradictory arguments: (1) any grant of immunity was limited in scope to his application, rather than a general release of liability; and (2) a general release of liability is overly broad and contravenes public policy. (Mot. to Dismiss Br. (dkt. #18) 8, 12.)

Plaintiff's first argument presents a question of contract interpretation governed by Wisconsin law. A court's primary goal is to give effect to the parties' intent. *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 22, 326 Wis.2d 300, 786 N.W.2d 15. The court must "interpret the language 'consistent with what a reasonable person would understand the words to mean under the circumstances.'" *Id.* (quoting *Seitzinger v. Cmty. Health Network,* 2004 WI 28, ¶ 22, 270 Wis.2d 1, 676 N.W.2d 426). Only when the contract is ambiguous should the court look beyond the terms of the contract. *Id.* Whether the contract is ambiguous is also a question of law for the court. *MS Real Estate Holdings, LLC v. Donald P. Fox Family Trust*, 2015 WI 49, ¶ 23, 362 Wis.2d 258, 864 N.W.2d 83.

Dr. Hussain's application states that he agrees to abide by the Hospital Bylaws in applying for the job. (Application (dkt. #15-1) 1.) The relevant language of Section 7.1 of the Bylaws seems to unambiguously require Hussain to execute releases and provide the hospital with immunity for specific conduct that goes well beyond the application itself. Accordingly, the language is enforceable absent being void as unconscionable or otherwise against public policy.

While not explicit, plaintiff essentially raises a question of unconscionability, which is better addressed at summary judgment on a more robust factual record. Unconscionability requires some quantum of both procedural and substantive unconscionability. *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 33, 290 Wis.2d 514, 714 N.W.2d 155. In evaluating whether procedural unconscionability exists, the court must consider, among other factors: Hussain's age, education, and intelligence; business acumen and experience; the relative bargaining power between the parties; whether the terms of the contract were explained to him; and whether alterations in the printed terms would have been permitted by the drafting party. *Id.* at ¶ 34. Substantive unconscionability further requires the court to determine whether the contract is unreasonably favorable to the more powerful party "in the light of the general commercial background and the commercial needs." *Id.* at ¶ 36 (citation omitted). Many of the relevant factors for either form of unconscionability simply are not in the record at this early stage of the litigation.

Plaintiff's second argument -- that the agreement is against public policy -- is also premature at the pleading stage. *See Gen. Split Corp. v. P&V Atlas Corp.*, 91 Wis. 2d, 119, 125, 280 N.W.2d 765 (1979) ("Whether the contract is illegal because it is opposed to

5

public policy is an issue which can only be resolved after full consideration of the facts"). Regardless, the only issue presently before the court is whether defendant has pleaded sufficient facts to state a plausible counterclaim for breach of contract. Since Ascension has done so, plaintiff's motion to dismiss will be denied.

**II. Defendant's Motion for Sanctions**

On February 28, 2019, defense counsel noticed plaintiff's deposition for April 16, 2019, in Milwaukee, Wisconsin. (Dep. Notice (dkt. #31-3) 1.) In early April, counsel for the parties communicated via email and telephone about the scheduling of plaintiff's deposition. Plaintiff's counsel opined that it was "unnecessary for the depositions in this matter to be conducted in person," adding that plaintiff "will be available for a video or phone deposition on the 16th." (Email Correspondence (dkt. #31-4) 3.)

What followed was a needless game of chicken that should be embarrassing to counsel for both parties, especially plaintiff's counsel, who had the obligation to seek relief from the court for the noticed deposition, rather than failing to appear.[3] Approximately a week later, defense counsel wrote:

> As you know, Dr. Hussain's deposition is scheduled to take place on Tuesday, April 16 at my office. You have not provided me any reason that either you or your client are not available that day. You have also not provided me any reason why you or your client are unable to come to Wisconsin -- where your client filed this lawsuit -- for this deposition. I understand that it would possibly be more convenient for your client to give his deposition by phone or video, but under the circumstances, we cannot oblige.

---

[3] Of course, nothing prevented defendant's counsel from seeking relief after it became painfully obvious that plaintiff was not going to appear in Milwaukee as scheduled.

(*Id.* at 2.)  In response, plaintiff's counsel reiterated that plaintiff would "be available by phone or video conference" and asking for the "dial in number or other arrangements . . . for Dr. Hussain's phone or video deposition."  (*Id.* at 1.)  The final email in this exchange came from defense counsel, and it reads "Despite your preference that we take Dr. Hussain's deposition by phone or video, we are planning to go forward with the deposition as noticed.  If your client does not appear, we will seek relief from the court as appropriate."  (*Id.*)

While the parties agree that counsel had a follow-up telephone discussion about this pointless exchange on April 4, they disagree about the substance of the discussion.  (*See* Mot. Sanctions (dkt. #30) 2 ("During that phone conversation, Plaintiff's counsel reiterated that it was Plaintiff's preference to give a deposition by phone or video so that he would not need to travel to Wisconsin from Maryland."); Pl.'s Opp'n (dkt. #32) 4 ("During the call, Plaintiff's counsel reiterated that based on Plaintiff's schedule he was unable to travel to Wisconsin on April 16, 2019 and telephone or video was the only way he could conduct his deposition that day.").)

Predictably, plaintiff did not appear in Wisconsin for his deposition on April 16, and the defendant filed this motion, asking the court to dismiss plaintiff's lawsuit or to compel plaintiff's deposition and extend the dispositive motion and discovery deadlines.  (Mot. Sanctions (dkt. #30) 1.)  In either case, defendant also seeks an award of monetary sanctions to cover expenses and fees associated with the missed deposition and the motion for sanctions.  (*Id.*)  Defendant contends that plaintiff failed to demonstrate exceptional circumstances or unreasonable hardship to justify his failure to appear.  (*Id.* at 3-4.)

In opposition, plaintiff generally argues that he "is a radiation oncologist and works

7

as a traveling locum tenens providing temporary coverage for hospitals across the country" in addition to his "practice in Waldorf, Maryland" and "privileges at George Washington Hospital in Washington DC," such that his "schedule changes from week to week" and he is "unable to leave the location" while on assignment because he is the only doctor providing care for cancer patients. (Pl.'s Opp'n (dkt. #32) 3-4.) Plaintiff explains that "during the April 16, 2019 time frame, Plaintiff was in Pennsylvania and Ohio for assignments and also had obligations at his local practice." (*Id.* at 4.) Somewhat disingenuously, plaintiff repeatedly hypothesizes that "[h]ad Defendant considered any alternatives such as other dates or methods for the deposition, this issue would have undoubtedly been resolved." (*Id.*)[4]

This dispute boils down to a breakdown in basic civility and professionalism -- for which both sides share responsibility and for which both sides will suffer the consequences. Counsel for both sides could and should have suggested and entertained ideas for alternatives and could and should have communicated more effectively. Failing that, either side could and should have availed itself of the court's assistance earlier. Instead, they waited until nearly a week following the missed deposition so that this matter could only be addressed on the eve of the dispositive motion deadline. So be it.

First, the November 12, 2019, trial date is *not* moving. Second, barring the parties mutually agreeing on a place and time convenient to both sides, plaintiff shall make himself available for deposition of no longer than six hours (exclusive of breaks and extraneous

---

[4] Whatever merit there may have been to rescheduling (or holding the deposition in a more convenient location or via videoconference) is water under the bridge since plaintiff failed to seek timely relief from this court.

discussions) in the offices of defendant's counsel in Milwaukee, Wisconsin, on a date and time of his choosing during the last two weeks of June with *at least* ten (10) days advance notice to defense counsel. Third, the deadlines leading up to trial are amended as follows:

- Dispositive Motions: July 19, 2019
- Opposition: August 5, 2019
- Reply: August 12, 2019
- Discovery Cutoff: August 30, 2019

All other deadlines in this case remain unchanged. In light of the unnecessary delays caused by counsel, the parties should expect a ruling on any dispositive motions near the eve of trial. No further extensions will be granted absent substantial good cause shown.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion to dismiss the counterclaim (dkt. #17) is DENIED.

2) Defendant's motion for sanctions is GRANTED IN LIMITED PART as set forth above and otherwise DENIED with the parties to bear their own fees and costs.

Entered this 5th day of June, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge