MOHAMMED HUSSAIN

        Plaintiff,

  v.

ASCENSION SACRED HEART-ST MARY'S
HOSPITAL, Inc.,

        Defendant.

Case No.: 3:18-cv-00529-wmc

Judge: Hon. Conley

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT

### BACKGROUND

Dr. Hussain is a radiation oncologist and medical doctor with over thirty years of experience. Dr. Hussain was a locum doctor at Ascension Saint Mary's and provided coverage in radiation oncology for providers on the following dates: June 13-17, 2011; July 18-22, 2011 and; March 2013. During his time at Ascension Saint Mary's, one of Dr. Hussain's supervisors was Kimberly Hetland, a medical dosimetrist, Director of Cancer Services and Manager of Radiation Oncology. Ms. Hetland supervised Dr. Hussain only regarding administrative matters such as training and onboarding. As a dosimetrist Ms. Hetland was responsible for implementing treatment plans created by Dr. Hussain. During his assignments at Ascension Saint Mary's, Dr. Hussain was not provided any negative feedback or given any indication there were

any issues with his work from anyone including Ms. Hetland.  To the contrary, Dr. Hussain did three locum assignments for Ascension Saint Mary's spanning almost two years. If there were concerns with patient care provided by Dr. Hussain, presumably he would not have been called back for additional assignments.

In 2014 and 2015, Ms. Hetland received a number of phone calls and correspondence regarding requests for employment verifications from third party hospitals for Dr. Husain's locum assignments.  Ms. Hetland wanted the request to stop because she was not a physician and the cancer center had no full time radiation oncologist to respond to the requests. On January 15, 2015, Ms. Hetland, as a dosimetrist, drafted a peer evaluation of Dr. Hussain's performance painting him in a very negative light.  Ascencions Medical Staff Coordinator of over ten years, Jennifer Brown, provided the so called "forever letter" to Ms. Hetland.  *See Exhibit* 2.

Ms. Hetland's purpose in drafting the forever letter was to place something in Dr. Hussain's file to stop multiple requests for information and verifications she received from third party hospitals. According to Ms. Brown, the forever letter was to be placed in Dr. Husain's file and sent to third party hospitals anytime verifications and other requests were received. Both Ms. Brown and Ms. Hetland understood that peer evaluations were to be completed by a physician, based on personal observation, but they nonetheless had Ms. Hetland fill out Dr. Hussain's peer evaluation and it was added to his file to be sent to third parties.

The Verification states Dr. Hussain was affiliated with Ascension Saint Mary's between 06/30/11 to 06/30/13.  The Verification also states it is a professional peer evaluation and provides ratings in several categories based on close personal observation of Dr. Hussain.  Dr. Hussain was provided the following ratings:

- **Patient Care** – below average for availability & thoroughness in patient care.

- **Medical/Clinical/Technical knowledge & skills** – Dr. Hussain was given a below average in medical knowledge, technical & clinical abilities and clinical judgment.

- **Interpersonal & Communication Skills** – Dr. Hussain was given a below average in all areas including ability to work with others, listening skills, relationships with patients, relationship with peers, relationship with hospital staff.

- **Professionalism** – Dr. Hussain was given a below average for professional demeanor and professional ethics.

- **System-Based Practice** – Dr. Hussain was given below average ratings for knowledge of practice and delivery systems and advocate for patients generating patient satisfaction.

- **Basis for Evaluation** -- These ratings were allegedly based on close personal observation by Kimberly Hetland. *See Exhibit* 2.

Peer evaluations are to be conducted by peers of physicians in the same specialty area based on close personal observation of the physician. Both Ms. Brown and Ms. Hetland understood that a dosimetrist could not draft a peer evaluation for a physician but did so anyway. Ms. Hetland checked the box that her evaluations were based on close personal observations of Dr. Hussain. *Id.* This was in fact false, because she based her evaluations on information told to her by nurses and other non-physicians that worked with Dr. Hussain and she did not personally observe any of the items she claimed in the evaluation. Ms. Hetland's only real interactions with Dr. Hussain were administrative regarding orientation and other matters. Ms. Hetland has no

basis for her evaluations beyond vague generalities told to her by others. The evaluations are therefore, false.

The forever letter was placed in Dr. Hussain's file and sent to countless hospitals. One such hospital was Dickinson County Healthcare System. During his Dickinson assignment in February 2015, Dr. Hussain was told the assignment was ended and that he should withdraw his application for privileges with Dickinson or face an adverse decision. *See Exhibit* 1. Dr. Mautone, Dickinson's Chairman of Credentialing, based his employment decision regarding Dr. Hussain on the forever letter which he deemed a "strongly negative" evaluation. *Mautone Dep.* 26-28. Dr. Mautone's decision ended Dr. Hussain's assignment and foreclosed the opportunity for future assignments. In identical fashion, Rockford Hospital in Illinois received the forever letter and relied on it in their decision to deny employment to Dr. Hussain for an assignment that was to begin on September 25, 2015. *See Exhibit* 3. The exact number of hospitals the forever letter was sent to is still unknown and Ascension allegedly maintained no such records.

The false claims contained in the forever letter formed the basis for the pending litigation filed in this Court on July 11, 2018. The false claims in the forever letter were based on the vague assertions of others not the personal observation of Ms. Hetland. These false claims were published to at least Dickinson and Rockford Hospitals if not more giving rise to the defamation claim. As a result of the false claims in the forever letter, Dr. Hussain's reputation has been damaged and he has lost employment opportunities. It was negligent for Ascension to allow a dosimetrist to issue a peer evaluation of Dr. Hussain. It was negligent for Ascension to allow a dosimetrist to issue a false evaluation while falsely claiming it was based on her personal observation.

On September 18, 2018, Ascension requested Dr. Hussain execute a release of liability and release it from the pending lawsuit. Dr. Hussain refused and stated he was under no obligation to sign such a release. On September 24, 2018, Ascension filed its Answer and Counterclaim alleging breach of contract for not signing the requested release and for bringing the current lawsuit. When Dr. Hussain signed his Statement of Application in 2011 however, he was not informed he was signing a release or given an opportunity to negotiate its terms. As a result, although the parties entered into a valid contract, the release and immunity provisions in the agreement were unconscionable and against public policy. Therefore, it was not a breach for Dr. Hussain to bring the present lawsuit.

## LEGAL STANDARD

Summary judgment is appropriate where no genuine issue of material fact exists so that the movant is entitled to a judgment as a matter of law. "If there are 'any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party,' then summary judgment may not be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When making this determination, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion*." Matsushita Elec. Indus. Co. v. Zenith radio Corp.*, 475 U.S. 574, 587-588 (1986).

## ARGUMENT

**A. <u>Summary Judgment Must Be Denied Because the Release and Immunity Provisions Are Unenforceable</u>**

In the instant case there is no dispute that the parties entered into a valid agreement on June 5, 2019. In its ruling on Plaintiffs Motion to Dismiss Defendant's Counterclaim, this Court recognized that "A court's primary goal is to give effect to the parties' intent." Dkt # 34. citing *Maryland Arms Ltd . P'ship v. Connell*, 2010 WI 64, ¶22, 326 Wis.2d 300, 786 N.2d 15. The court must "interpret the language 'consistent with what a reasonable person would understand the words to mean under the circumstances.'" *Id.* This Court determined that while the language of the application was unambiguous regarding the requirement for a release and providing immunity, the issue was whether the language was enforceable absent being void as unconscionable or otherwise against public policy. *Id.*

1. <u>Summary Judgment Must be Denied Because the Release and Immunity Provisions Were Unconscionable</u>

Determining whether procedural unconscionability exists requires examining factors that bear upon the formation of the contract, that is, whether there was a "real and voluntary meeting of the minds" of the contracting parties. *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 34. The factors to be considered include, but are not limited to, age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract. *Id*. The Wisconsin Supreme Court has held that "one of the attributes of contracts of adhesion is that they are typically offered on a take-it-or-leave-it basis with no opportunity for negotiation or modification." *Id*. at ¶ 53. The Court in *Wisconsin Auto Title Loans* ruled the arbitration clause in a loan was procedurally unconscionable. *Id. at*

In the instant case, Dr. Hussain was a 66 year old radiation oncologist who was being brought in as a locum in the radiation oncology department in 2011 for a one week assignment. Dr. Hussain had no bargaining power or ability to negotiate a dual purpose agreement presented as a job application. The Application was offered in a rushed fashion and Dr. Hussain had no time to review it or negotiate its release and immunity provisions based on time restraints from Ascension. *Hussain Dep. 46-48*; *Exhibit* 4. Dr. Hussain testified "this consent is only limited to my background and my application…It's not a general liability – a release of liability." Dr. Hussain further testified "that is only for background check," "the liability and all of these things I definitely did not understand." *Hussain Dep. 57-60*.

Dr. Hussain testified, " if I knew the that this is legal theory behind it, I would have rejected, yes." *Hussain Dep*. 62. Ascension's Medical Staff Coordinator Julie Brown testified the Statement of Application was, "to me, it states that he is giving me permission to do all the right checks on him, to check his liability insurance, to be able to go out and get verifications from other facilities that they have worked at, to do verifications from other physicians." *Brown Dep. 27-28*. Therefore, as in *Wisconsin Auto Title Loans,* there is clearly a dispute as to whether the release and immunity provisions were procedurally unconscionable because both Dr. Hussain and Ascension's Medical Staff Coordinator believed it was only authorization for a background check.

Substantive unconscionability addresses the fairness and reasonableness of the contract provision subject to challenge. *Wisconsin Auto Title Loans* at ¶ 35. Wisconsin courts determine whether a contract provision is substantively unconscionable on a case-by-case basis. *Id.* Substantive unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party. *Id.* at ¶ 36. The analysis of substantive unconscionability

requires looking at the contract terms and determining whether the terms are "commercially reasonable, "that is, whether the terms lie outside the limits of what is reasonable or acceptable. *Id.* In *Wisconsin Auto Title Loans*, the arbitration clause in the loan agreement contained a "save and except" parenthetical that allowed the lender to enforce the borrow repayment obligations in federal court in the event of default. *Id.* at ¶ 62. The Wisconsin Supreme Court held the arbitration clause to be substantively unconscionable because of its overly broad and one-sidedness. *Id*. at ¶ 68.

The terms of the Statement of Application are unreasonably favorable to Ascension because it was offered on a take it or leave it basis,  with no opportunity to negotiate and also incorporated the hospitals Bylaws and immunity provisions. By requiring a general release in a take it or leave it employment application it clearly provided Ascension the upper hand. Similar to the "save and except" parenthetical in *Wisconsin Auto Title loans*, Ascension was provided an unfair advantage because they were still under no obligation to hire Dr. Hussain after receiving the alleged general release of liability.  It is commercially unreasonable to combine a general release and immunity clauses  with an employment application without clearing separating them, informing the applicant what is being agreed to and affording an opportunity to negotiate.

A dual agreement such as the Application fails to adequately put the signer on notice they are signing two separate and distinct agreements with separate obligations. The title "Statement of Application" along with submission with the application packet infers the signer is submitting an employment application only. It is commercially unreasonable fail to explain to an applicant that they are also signing a release of liability as part of their application. In fact, Dr. Hussain testified that had he known he was signing a general release outside of the application, he would

have rejected the application. Therefore, as in *Wisconsin Auto Title Loans*, the release provisions were unreasonably favorable to Ascension and as a result, substantively unconscionable.

Ascension argues that Plaintiff failed to file a Answer to their counterclaim and as a result all facts stated in the counterclaim must be deemed admitted. This argument must be rejected by this Court. Plaintiff filed a Motion for Leave to Late File its answer to the counterclaim based on excusable neglect on July 29, 2019. Among the stated reasons was inadvertence and oversight by counsel based on the activity in the case including depositions, resolving discovery disputes and preparing for summary judgment. Additionally, Plaintiff's counsel had a very busy schedule in June and July because he is lead counsel in a class action litigation in federal court in the District of Columbia. As Stated in the Motion, the failure to file a Answer to the Complaint was inadvertence, there was no bad faith, no prejudice occurred to Defendant and as exemplified in Plaintiff's Summary Judgment and Opposition to Defendant's Summary Judgment, Plaintiff has a meritorious case that must be heard on the merits. Therefore, Defendant's Summary Judgment must be denied.

    2.   <u>Summary Judgment Must be Denied Because the Release and Immunity Provisions Were Against Public Policy</u>

In *Richards v. Richards*, the Wisconsin Supreme Court concluded that a passenger authorization form containing exculpatory language was in fact a general release. *Richards v. Richards*, 181 Wis. 2d 1007, 513 N.W.2d 118, 1994 Wisc. LEXIS 26 (Wis. March 8, 1994). The Court held the language of release attempted to transform the "Passenger Authorization" form into an exculpatory contract relieving Monkem Company and all of its affiliated companies, partnerships, individuals and corporations (as well as others) from any and all liability for harm to the person signing the form. *Id*. at 1012 citing *Merten v. Nathan*, 108 Wis. 2d 205, 210, 321

N.W.2d 173 (1982). The Court also held the release should have been conspicuously labelled as such to put the person signing the form on notice. *Id*. at 1018.  Moreover, to prevent confusion under these circumstances, the passenger's release of the Company from liability should have been carefully identified and distinguished from the Company's authorization for a passenger to ride along. *Id*. Identifying and distinguishing clearly between those two contractual arrangements could have provided important protection against a signatory's inadvertent agreement to the release. *Id*.

Similar to the "Passenger Authorization" form in *Richards*, the Statement of Application purports to provide blanket immunity from any and all liability to Ascension. The Statement of Application is not conspicuously labeled "release of liability" similar to the "Passenger Authorization" form in *Richards*.  In fact, Dr. Hussain believed it was authorization for a background check, verifications and to be used to complete his application. As in *Richards*, the Statement of Application should haven conspicuously labeled as a "Release of Liability" to provide the signer notice of what they were signing and an opportunity to negotiate.  As in *Richards*, the release is so intertwined with the application, that the two should have been separated in two separate documents for each of the two separate contractual obligations. As a result the release provisions are against public policy.

In *Yauger v. Skiing Enters*, the Wisconsin Supreme Court based its determination of the enforceability of an exculpatory clause on two grounds: "First, the waiver must clearly, unambiguously, and unmistakably inform the signer of what is being waived. Second, the form, looked at in its entirety, must alert the signer to the nature and significance of what is being signed." *Id*. at P15 citing *Yauger*, 206 Wis. 2d at 84. In the case at bar, similar to *Yauger*, Dr. Hussain submitted an employment application with application packet. The alleged releases and

immunity contained in the application were contained in the ambiguously titled Statement of Application. In fact, both Dr. Hussain and Jennifer Brown testified they thought the application was permission for a background check and verifications only. Dr. Hussain testified at length that his understanding was that he was just signing a standard application giving permission for background check but he would have rejected it if he knew it was a release of liability. As a result, a dispute exists for the trier of fact to determine if ambiguity existed as to the release and immunity provisions contained in the application and if the application should have been separated from the release and immunity provisions.

**B.** **Summary Judgment Must Be Denied Because There are Facts in Dispute Regarding Negligence**

In order to maintain a cause of action for negligence in Wisconsin, there must exist: (1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250 (1998) citing *Rockweit v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995). The proper analysis of duty in Wisconsin is as follows: "The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act . . . ." Id. at ¶ 9 citing *Rockweit,* 197 Wis. 2d at 419-20 (quoting *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483-84, 214 N.W.2d 764 (1974)). "'A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone.'" *Rolph v. EBI Cos.,* 159 Wis. 2d 518, 532, 464 N.W.2d 667 (1991). The duty is to refrain from such act or omission. See *A.E. Investment*, 62 Wis. 2d at 485.

Ms. Hetland testified she received several requests for verifications and information from third party hospitals following Dr. Hussain's final assignment. Hetland Dep. 85-86. Ms. Hetland understood that as a dosimetrist she could not fill out a peer evaluation for a physician, "those types of request, specifically are directed to a physician, a physician medical director, physician chair – and I was not one of those." *Id.* Ms. Brown also testified that a dosimetrist could not fill out a peer evaluation for a physician and that another physician in the same specialty, who personally observed the providers work was required. *See Brown Dep*. 47-48.

Ascension clearly owed a duty to Dr. Hussain to have his peer evaluation completed by another physician who personally observed his work and Ms. Brown and Ms Hetland understood this. Ms. Hetland and Ms. Brown's own testimony confirms it was a breach for a dosimetrist to complete the evaluation. *Hetland Dep*. 92; *Brown Dep*. 47-48. It was also a breach to indicate the evaluation was based on Ms. Hetland's personal observation when in fact, it was based on the vague observations of other non-physicians that worked with Dr. Hussain. *Hetland Dep*. 102; 120-122. Defendant advances no facts or arguments why a duty was not owed to Dr. Hussain.

Ms. Brown testified the forever letter was negative and contained red flags and she would have brought it to the attention of her Medical Chair had she received such an evaluation. *Brown Dep*. 85-86. In sending out the evaluation to third party hospitals requesting verifications about Dr. Hussain, it was reasonably foreseeable third party hospitals would also consider the evaluation negative, to be a red flag and consider the evaluation in making employment decisions about Dr. Hussain. The evaluation did cause injury to Dr. Hussain because his Dickinson assignment was cut short and application for credentials withdrawn based on the evaluation.

Dickinson's Chairman of Credentialing confirmed they received the evaluation, confirmed it was negative and testified "you were asking how we make our decisions, and this was a document that we would base a decision upon." *Mautone Dep*. 26; *Hussain Dep*. 109. In identical fashion, after receiving the evaluation, Rockford Memorial Dr. Hussain's assignment citing receipt of a negative evaluation from Ascension. *See Exhibit* 3. As a result, Dr. Hussain's reputation has been significantly damaged by the evaluation which third party hospitals have relied on and he has lost income from potential long term assignments. The evaluation was clearly the proximate cause of injury to Dr. Hussain's reputation and financial injuries. As a result, there are facts in dispute regarding Ascension's negligence and summary judgment must be denied.

    1.   <u>Summary Judgment Must Be Denied Because There are Facts in Dispute</u>
<u>Regarding Ascension's Negligence In Supervising Its Employees</u>

With respect to a cause of action for negligent hiring, training or supervision, the Wisconsin Supreme Court has determined that the causal question is whether the failure of the employer to exercise due care was a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury. *Miller v. Wal-Mart Stores, Inc.,* 219 Wis. 2d 250, 260, 580 N.W.2d 233 (1998). In other words, there must be a nexus between the negligent hiring, training, or supervision and the act of the employee. *Id.* This requires two questions with respect to causation. The first is whether the wrongful act of the employee was a cause-in-fact of the plaintiff's injury. *Id.* The second question is whether the negligence of the employer was a cause-in-fact of the wrongful act of the employee. *Id.* citing See, e.g., *Louis Marsch, Inc. v. Pekin Ins*. Co., 140 Ill. App. 3d 1079, 491 N.E.2d 432, 437, 96 Ill. Dec. 386 (Ct. App. Ill. 1985). The act of the employee,

whether intentional or unintentional, must be causal to the injury sustained. *Id*. But equally

important, the negligence of the employer must be connected to the act of the employee. *Id*.

In the instant case, it was wrongful for a dosimetrist to draft a peer evaluation for a physician,

based on false grounds of personal observation when it was in fact based on the vague

observations of others.  As discussed, Ms. Brown and Ms. Hetland understood a physician

needed to complete the evaluation based on personal observation but they regardless, Ms.

Hetland drafted the forever letter and it was published. The publication of this false evaluation

resulted in irreparable harm to Dr. Hussain's reputation, and in financial harm in the loss of

assignments. Ascension's negligent supervision of Ms. Brown and Ms. Hetland resulted in the

drafting and publication of the false evaluation.

Ascension's negligent supervision was three-fold: 1) Allowing a dosimetrist to draft a peer

evaluation for a physician, 2) allowing a dosimetrist to falsely state the evaluations were based

on personal observation when it was based on vague observations of other non-physicians, and

3) allowing the distribution of the negative and false evaluation to third party hospitals who

reasonably relied on it in making employment decisions. It was therefore, negligent supervision

by Ascension to allow its employees to engage in negligent conduct which would foreseeably

result in injury to Dr. Hussain. As a result, summary judgment must be denied for the negligence

claim.

     C.  **<u>Summary Judgement Must Be Denied Because There are Facts in Dispute</u>**

           **<u>Regarding Defamation</u>**

In Wisconsin, the elements of a defamatory communication are: (1) a false statement; (2)

communicated by speech, conduct, or in writing to a third person; (3) that is unprivileged and

tends to harm one's reputation so as to lower that person in the estimation of the community or deters others from associating or dealing with the person. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 534, 563 N.W.2d 472 (1997); Wis. Jl-Civil 2500 at 1 (1993) and 2501 at 1 (1991). Whether a communication is capable of a defamatory meaning is a question of law for the court. Id. citing *Lathan v. Journal Co.*, 30 Wis. 2d 146, 153, 140 N.W.2d 417 (1966); Wis. Jl-Civil 2500 at 4. The legal standard for determining whether a statement is capable of conveying a defamatory meaning is whether the language is reasonably capable of conveying a defamatory meaning to the ordinary mind and whether the meaning ascribed by the plaintiff is a natural and proper one. Id. citing Wis. Jl-Civil 2500 at 5. "The words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered." *Frinzi v. Hanson,* 30 Wis. 2d 271, 276, 140 N.W.2d 259 (1966); see also *Tatur v. Solsrud*, 174 Wis. 2d 735, 741, 498 N.W.2d 232 (1993).

In the instant case, in their summary judgment Defendant advances no facts or arguments that the statements made by Ms. Hetland were not false and this must be deemed an admission. Ms. Hetland testified the facts contained in the evaluation were based on information provided by others not her personal observations which makes the evaluations false. *Hetland Dep.* 120-121. Second, it is irrefutable that Rockford and Dickinson received the evaluation and used it in making their employment determination regarding Dr. Hussain. *See Exhibit* 1 and 3. and Mautone Dep. 24-26. Dr. Mautone testified he received the forever letter, felt it was very negative, and based his employment decision on the evaluation. Mautone Dep. 26-28. The evaluation clearly paints Dr. Hussain in a negative light and harmed his reputation because of the

below average ratings and alleged concern for patient care. Dr. Mautone took these allegations seriously as did Rockford in canceling Dr. Hussain's assignment.

Generally, a defamatory communication must be a statement of fact rather than an expression of opinion. *See Wis. Jl-Civil* 2500 at 2. But communications are not made nondefamatory as a matter of law merely because they are phrased as opinions, suspicions or beliefs. *Milsap v. Journal/Sentinel, Inc*., 100 F.3d 1265, 1268 (7th Cir. 1996) (discussing Wisconsin law); *Converters Equip. Corp. v. Condes Corp.*, 80 Wis. 2d 257, 263-64, 258 N.W.2d 712 (1977). When the declarant departs from expressing pure opinion and communicates a "mixed opinion" -- a communication blending an expression of opinion with a statement of fact -- the communication may nevertheless be actionable if it implies the assertion of undisclosed defamatory facts as the basis of the opinion. *Milsap*, 100 F.3d at 1268; Wis. Jl-Civil 2500 at 2 (citing Restatement (Second) of Torts § 566 (1977)).

Here, the evaluations for poor performance in patient care, medical and technical skills, communication skills, professionalism and system based practice are allegedly based on facts. A professional peer evaluation for a physician based on personal observation is not simply opinion, it is based on facts regarding that providers performance. Therefore, Ms. Hetland's ratings in the forever letter would be fact statements sufficient for a cause of action for defamation. Ms. Hetland's additional comments include both facts as to Dr. Hussain's alleged poor performance and opinions as to patient safety under his care. Based on the mixed nature of the additional comments, these additional comments are also fact statements sufficient for defamation cause of action. As a result, the statements in the evaluation are actionable as a cause of action for defamation.

1) <u>Summary Judgement Must Be Denied Because there Is No Conditional</u>

    <u>Privilege to Protect the Communication</u>

In the instant case, Defendant argues that even if the statements in the evaluation were false, they were conditionally privileged and therefore not actionable under a defamation claim. The Wisconsin Supreme Court has held the defense of conditional privilege may be lost if certain conditions do or do not occur. *Ranous v. Hughes*, 30 Wis. 2d 452, 460, 141 N.W.2d 251 (1966). In *Hett v. Ploetz* the Wisconsin Supreme Court stated, "The privilege is said to be 'conditional' because of the requirements that the declaration be reasonably calculated to accomplish the privileged purpose." *Id.* at 467, 468 citing *Hett v. Ploetz*, 20 Wis. 2d 55, 121 N.W.2d 270, 274 (Wisc. 1963). The Restatement further lists the four conditions which may constitute an abuse of the privilege, and the occurrence of any one causes its loss. *Id.* These are: (1) The defendant either did not believe in the truth of the defamatory matter or, if believing the defamatory matter to be true had no reasonable grounds for so believing; (2) because the defamatory matter was published for some purpose other than that for which the particular privilege is given; (3) because the publication was made to some person not reasonably believed to be necessary for the accomplishment of the particular privilege; or (4) because the publication included defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the privilege is given. *Id.*

In the instant case, the privileged purpose of the forever letter was to convey an objective peer evaluation of Dr. Hussain's performance. Ms. Hetland however, testified the actual purpose of the forever letter was to get the requests for information she received for Dr. Hussain to stop. *Hetland Dep.* 92. Ms. Hetland testified the forever letter purpose was "to really stop the inquiries, the ongoing inquiries, for other hospital questionnaires, because I wasn't – I wasn't

going to fill those out because those were directed to a physician – so I wanted to, you know, kind of cease that so that we could just – I wouldn't have to, you know, manage this component that was kind of never-ending." *Id.* In her own words Ms. Hetland testified the purpose of the forever letter was other than to relay the alleged poor performance of Dr. Hussain, it was simply to cease third party requests for information so she would no longer have to deal with them. Certainly, if the purpose was to have an objective evaluation of Dr. Hussain, the publication of the false and defamatory information went beyond the bounds of the conditional privilege because of the stated purpose to stop additional requests. *Hetland Dep*. 102.

The Wisconsin Supreme Court has held that defamatory publications made out of spite or ill will are an abuse of the conditional privilege. *Ranous* at 469. Clearly, Ms. Hetland had some ill will toward Dr. Hussain in writing the peer evaluation because. The negative evaluations contained in the forever letter, her additional comments and the fact she had no personal basis for the observations exemplify that. Additionally, the purpose of the forever letter was not to provide an objective evaluation but to stop information requests. As a result, even if this Court finds there was a conditional privilege regarding communication of the forever letter, the privilege is lost because of abuse as exemplified by Ms. Hetland's testimony.

<u>Conclusion</u>

For the forgoing reasons, pursuant to Rule 56 summary judgment must be denied. As stated in this Opposition, there are substantial facts in dispute regarding the following: 1) whether the terms of the release and immunity clauses were unconscionable or against public policy, 2) whether Ascension was negligent in supervision of Ms. Brown and Ms. Hetland, and

3) whether the forever letter was defamatory and if a conditional privileged existed.   As a result,

summary judgment must be denied.

WHEREFORE:  Plaintiff respectfully requests that this Court deny Defendant's Summary
Judgment, and requests that this Court grant such other and further relief as this court deems
appropriate.

DATED: August 5, 2019

Respectfully Submitted,

/s/

Ryan A. Hintzen, Esq.
Bar No. 495538
The Hintzen Law Firm
601 Pennsylvania Ave
Suite 900, South Building
Washington, DC  20004
P: 202-638-6988
ryan@hintzenlf.com

*Attorney for Plaintiff/Counter Defendant*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this August 5, 2019 a copy of the foregoing was electronically served via ECF:

Sofija Anderson, (WI State Bar 1041498)
Julia S. Arnold (WI State Bar 1083034)
Littler Mendelson, P.C.  111 East Kilbourn Avenue, Suite 1000
Milwaukee, WI 53202
Phone: 414-291-5536

Fax: 414-291-5526
Email: sanderson@littler.com
Email: jarnold@littler.com

*Counsel for Defendant/Counterclaimant,*
*Ascension Sacred Heart – St. Mary's Hospital, Inc.*

Respectfully submitted,

/s/

Ryan A. Hintzen, Esq.