IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MOHAMMED A. HUSSAIN,

                              Plaintiff,                    OPINION AND ORDER

        v.                                                 18-cv-529-wmc

ASCENSION SACRED HEART --
ST. MARY'S HOSPITAL, Inc.,

                              Defendant.

Plaintiff Mohammed A. Hussain asserts defamation and negligence claims against defendant Ascension Sacred Heart -- St. Mary's Hospital, Inc. ("the Hospital"), over a negative performance evaluation letter. The Hospital counterclaimed, alleging that Hussain had entered into a contract when he applied to work at the Hospital and breached this contract when he brought this lawsuit and refused to execute a release of claims. Presently before the court are parties' cross-motions for summary judgment.[1] (Dkts. ##35, 42.) For the reasons discussed below, the court concludes that plaintiff has failed to produce sufficient evidence for a reasonable jury to find in his favor on his defamation and negligence claims. The court further concludes that defendant has demonstrated that no reasonable jury could find against its counterclaims for breach of contract. Accordingly, the court will deny plaintiff's motion and grant summary judgment in favor of defendant.

---

[1] Plaintiff also moves for leave to file an answer to defendant's counterclaims. (Dkt. #47.) The court does not necessarily agree with plaintiff that the late filing was "insignificant" as his answer was filed after the dispositive motion deadline. However, other equitable factors weigh in favor of plaintiff's motion, including plaintiff's apparent good faith and the fact that the late filing did not ultimately cause undue prejudice or delay. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) (observing that the Federal Rules of Civil Procedure "give[] courts discretion in most situations to forgive missed deadlines" and that such a decision is "at bottom an equitable one"). The court will, therefore, grant this motion.

The only issue that remains is what relief, if any, is warranted for plaintiff's breach of contract, which the court will consider in further proceedings as set forth in the order below.

## UNDISPUTED FACTS[2]

Plaintiff Mohammed A. Hussain is a radiation oncologist and medical doctor. Defendant Ascension Sacred Heart -- St. Mary's Hospital, Inc., hired Hussain to work as a "locum tenens" radiation oncologist for three short periods in 2011 and 2013. Locum tenens are physicians hired on a temporary, as-needed basis. Prior to providing services at the Hospital, Hussain signed a Statement of Application ("the Application"), which provided in relevant part:

> I understand that the hospitals and Medical Staffs where I have applied may receive requests from other hospitals, medical societies, and other legitimately interested organizations and institutions, for information pertaining to my qualifications and performance as an applicant and/or member of the Medical Staff. . . . I also recognize that in seeking and exchanging information, as well as in the peer review and evaluation process, candid evaluations may give rise to statements that may be critical or otherwise arguably defamatory of me.
>
> * * *
>
> I specifically agree and consent to the following: . . .
> To release from liability, to the fullest extent permitted by law, the hospitals and all hospital representatives for their acts in

---

[2] Unless otherwise noted, the following facts are deemed material and undisputed as drawn from the parties' proposed findings and responses, as well as the underlying evidence of record. Given the tangential nature of many, if not most, of plaintiff's responses to defendant's proposed factual findings, the court emphasizes that it only considered plaintiff's responses to the extent that they raised a genuine, material dispute. (*See* Prelim. Pretrial Packet at 6 (available at dkt. #23) ("When a responding party disputes a proposed finding of fact, the response must be limited to those facts necessary to raise a dispute. The court will disregard any new facts that are not directly responsive to the proposed fact.").) The court has also generally "not consider[ed] facts contained only in a brief." (*Id.* at 3.)

> connection with evaluating me, this application and my
> credentials, qualifications and experience; . . .

(Hussain Dep., Ex. 2 (dkt. #39-2).)

The Application also expressly incorporated the terms of the Medical Staff Bylaws

("the Bylaws") as follows:

> I pledge . . . to acknowledge and abide by any Medical Staff
> Bylaws requirement for release and immunity from civil
> liability.
>
> * * *
>
> I specifically agree and consent to the following: . . .
> To abide by the terms of the Medical Staff and hospital Bylaws
> in all matters relating to the consideration of this application .
> . . . In this regard, I acknowledge that I have received and had
> the opportunity to review the Medical Staff Bylaws, Rules and
> Regulations, and any Hospital Bylaws or rules and policies that
> may pertain.

(Hussain Dep., Ex. 2 (dkt. #39-2).)

Finally, the Bylaws included a section titled "Immunity from Liability," which

provided in relevant part:

> The following shall be conditions to any individual's
> application for Medical Staff membership or exercise of clinical
> privileges at the Hospital:
> (a) any act, communication, report, recommendation or
> disclosure, with respect to any individual performed or made
> at the request of an authorized representative of this or any
> other health care facility, for the purpose of achieving and
> maintaining quality patient care in this or any other health care
> facility, shall be privileged to the fullest extent permitted by
> law;
> (b) such privileges shall extend to members of the Medical
> Staff and Governing Body, the President and designated
> representatives and to third parties who supply information to
> any of the foregoing authorized to receive, release, or act upon
> the same. For the purposes of this Section, the term "third
> parties" means both individuals and organizations who have
> supplied information to or received information from an
> authorized representative of the Governing Body or of the

Medical Staff;

(c) there shall, to the fullest extent permitted by law, be absolute immunity from civil liability arising from such act, communication, report, recommendation, or disclosure, even where the information involved would otherwise be deemed privileged;

(d) such immunity shall apply to all acts, communications, reports, recommendations, or disclosures performed or made in connection with this or any other health care institution's activities related but not limited to:

    (1) applications for appointment or clinical privileges;

                . . .

    (5) medical care evaluations;

                . . .

(e) the acts, communications, reports, recommendations and disclosures referred to in this Section may relate to an individual's professional qualifications, clinical competency, character, ethics, or any other matter that might directly or indirectly have an effect on patient care;

(f) in furtherance of the foregoing, each individual shall, upon request of the Hospital, execute releases in accordance with the tenor and import of this Section in favor of the individuals and organizations specified in Section 7.1(b), subject to such requirement, including the exercise of a reasonable effort to ascertain truthfulness, as may be applicable under the laws of this state. Execution of such releases is not a prerequisite to the effectiveness of this Section; . . . .

(Banas Decl., Ex. 1 (dkt. #40-1) 34-35.)

Hussain did not read the Bylaws prior to signing the Application, and he does not recall reading the Application itself prior to signing it. Hussain further testified that there was a "rush" to complete the Application. (Hussain Dep. (dkt. #39) 46.) He did not ask any questions about the Application or Bylaws, nor ask if he could modify them. When Hussain signed the Application in 2011, he had other options for locum tenens placements available to him.

Hussain was assigned to the Hospital for a total of twelve days, working three, four-day stints in June 2011, July 2011, and March 2013. During each of the periods that

Hussain worked at the Hospital, Kimberly Hetland was the manager of the Radiation Oncology Department, functioning as a dosimetrist -- a medical professional, though not a physician, who works with radiation oncologists to come up with treatment plans for patients. During and after Hussain's assignments, other members of the radiation oncology team raised a number of concerns with Hetland in her capacity as manager about Hussain and his work. After Hussain's third assignment in 2013, therefore, Hetland requested that Hussain's next scheduled assignment with the Hospital be cancelled.

In January 2015, Hetland completed a form -- which the parties refer to as a "forever letter" -- that included a "professional/peer evaluation" of Hussain. (Pl.'s Resp. to DPFOF, Ex. 2 (dkt. #53-2).) The forever letter included a "check-the-box" portion where Hetland mostly ranked Hussain as "below average" on skills such as medical knowledge, patient care outcomes and professional demeanor. The letter also included a narrative portion where Hetland wrote in part that she "would not have [Hussain] come back *even if* we were in dire need." (*Id.* (emphasis in original).) This letter was provided to at least two medical doctors who worked outside of the Hospital.[3]

On July 11, 2018, Hussain sued the Hospital over this forever letter, claiming that its issuance constitutes actionable defamation and negligence. On September 14, 2018,

---

[3] Defendant objects to this evidence, arguing that it was elicited at a deposition in a different lawsuit and is therefore inadmissible. (Def.'s Reply (dkt. #57) 7.) As explained in greater detail below, the court will overrule this objection as to the *substance* of the testimony, which is admissible even though it is not currently in a *form* that may be admitted at trial, just as the substance of a third-party affidavit is admissible for summary judgment while it would constitute inadmissible hearsay at trial. Because defendant has produced no evidence to dispute the fact that the medical doctors received the letter, the court also considers that fact to be undisputed for the purposes of the summary judgment motion. *See* Fed. R. Civ. P. 56(e).

the Hospital requested that Hussain execute a release of claims against the Hospital. When Hussain did not do so within ten days, the Hospital filed two breach of contract counterclaims against him, claiming that he breached the terms of his Application and incorporated Bylaws in both filing suit and refusing to execute the release agreement.

OPINION

Now before the court are the parties' cross-motions for summary judgment. Defendant has moved for summary judgment on plaintiff's defamation and negligence claims, as well as on its own breach of contract counterclaims. Plaintiff seeks summary judgment only on defendant's counterclaims.

Because the court's subject-matter jurisdiction is based on diversity of citizenship,[4] Wisconsin substantive law applies. *See Piltch v. Ford Motor Co.*, 778 F.3d 628, 631 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)) ("[A] federal court sitting in diversity must apply the substantive law of the state in which it sits . . . ."). However, the court's procedures remain governed by federal law. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[4] As the court noted in its order on plaintiff's motion to dismiss counterclaim, plaintiff alleged that he "resides in Maryland," which the court took to mean that he was domiciled in Maryland for purposes of assessing federal jurisdiction. (Order (dkt. #34) 2 n.1.) *See Am.'s Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992) ("In federal law citizenship means domicile, not residence."). Since plaintiff essentially adopted that position in proceeding forward, and defendant has not disputed it, the court accepts as undisputed the fact that plaintiff's domicile is Maryland. In contrast, the Hospital is incorporated and maintains its principal place of business in Wisconsin. Because the amount in controversy also exceeds $75,000, the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Fed. R. Civ. P. 56(a).  A party requesting summary judgment on claims for which the opposing party bears the burden of proof may either produce evidence that negates the opposing party's claims or show that there is an absence of evidence to support the opposing party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  An even higher burden rests with a party seeking summary judgment on claims for which it has the ultimate burden at trial.  *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015).  To prevail, the party with the ultimate burden "must lay out the elements of the claim[s], cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim[s]." *Id.*

In evaluating the record, the court must construe all evidence in the light most favorable to the party opposing the summary judgment motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 601 (1986).  Where, as here, the parties have both moved for summary judgment, the court must also take care to consider each motion in the proper light.  *See Hotel 71*, 778 F.3d at 603; *see also McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008) ("[O]n cross-motions for summary judgment, inferences are drawn in favor of the party against whom the motion under consideration was made.").

## I.  Contract

### A.  Breach

Both parties have moved for summary judgment on defendant's breach of contract counterclaims, including on plaintiff's two breach defenses -- namely, that the contract is unconscionable and against public policy.  The court will first consider the merits of

defendant's motion, construing all evidence in the light most favorable to plaintiff. *See Matsushita*, 475 U.S. at 601. Even viewing the evidence of record in unfavorable light to defendant, the court concludes that it is entitled to summary judgment on its breach of contract claim.

A breach of contract claim under Wisconsin law requires proof of the breach of a duty arising out of "that contract and damages flowing reasonably from that breach." *Nw. Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200 (1971). A valid contract must be supported by an offer, acceptance and consideration. *Runzheimer Int'l, Ltd. v. Friedlen*, 2015 WI 45, ¶ 20, 362 Wis. 2d 100, 862 N.W.2d 879. Breach is determined by looking to the terms of the contract. "Contracts are interpreted to give effect to the parties' intent, as expressed in the contractual language." *Seitzinger v. Cmty. Health Network*, 2004 WI 28, ¶ 22, 270 Wis. 2d 1, 14, 676 N.W.2d 426, 433. Only when the contract language is ambiguous should the court look beyond the literal terms of the contract.[5] *Id.*

Defendant asserts that the Application -- and by incorporation the Bylaws -- was a valid contract between Hussain and the Hospital. In entering into this contract, defendant argues, Hussain agreed: (1) to hold the Hospital immune from civil liability in connection with its evaluation of Hussain; and (2) upon request, to execute a release of claims related

---

[5] In plaintiff's brief, he refers to statements made in depositions by Jennifer Brown (a medical staff coordinator at the Hospital) and him regarding their interpretations of the Application. These statements are ostensibly offered to demonstrate that the contract language is ambiguous. (*See* Pl.'s Br. (dkt. #44) 2-3.) However, contract language "is to be interpreted consistent with what a *reasonable person* would understand the words to mean under the circumstances." *Seitzinger*, 2004 WI ¶ 22 (emphasis added). Of course, statements made by contracting parties may be relevant for other purposes, such as to serve as evidence of subsequent modifications to the contract. *S&M Rotogravure Serv., Inc. v. Baer*, 77 Wis. 2d 454, 468-69, 252 N.W.2d 913 (1977). However, the court does not understand plaintiff to be making such an argument. Because the court interprets the unambiguous terms of a contract as a reasonable person would, not as Hussain or Brown would, the court did not consider their statements assessing the contract's straightforward language.

to the Hospital's evaluation of him. Accordingly, defendant argues that Hussain breached the contract both in filing the lawsuit against the Hospital and in refusing to execute a release. Plaintiff does not attempt to dispute that both these obligations are spelled out in his agreement with the Hospital, nor that he fulfilled neither. Rather, plaintiff argues that the court should decline to enforce the terms of the contract as unconscionable and against public policy.

Before turning to plaintiff's defenses, the court will consider whether defendant has proven the elements of its counterclaim. Perhaps because plaintiff all but concedes that Hussain breached the express terms of the parties' contract, defendant's explanation of the alleged breach is rather thin. Regardless of the weakness of the opposing party's defense, however, a party moving for summary judgment on claims for which it bears the ultimate burden of persuasion must present sufficient undisputed facts to convince the court that no reasonable jury could find against it and that it is entitled to judgment as a matter of law. *See Hotel 71*, 778 F.3d at 601. Despite defendant's limited exposition, however, the court agrees that the record is "so one-sided as to rule out the prospect of finding in favor" of plaintiff with respect to his liability for breaching the contract, assuming the relevant terms are not unenforceable. *Id.*

First, neither party disputes that there was a valid contract between Hussain and the Hospital, nor that the Application and Bylaws reflect the terms of that contract. Moreover, as set forth above, the Application and Bylaws spell out multiple times and in various ways Hussain's agreement not to hold the Hospital liable for evaluating him and to release the Hospital from any civil claims that might arise out of its doing so. Specifically, according to the terms of the Application, Hussain "agree[d] . . . to release

from liability . . . the hospital and all hospital representatives for their acts in connection with evaluating me." (Hussain Dep., Ex. 2 (dkt. #39-2).) Hussain further "pledge[d] to . . . abide by any Medical Staff Bylaws requirement for release and immunity from civil liability." (*Id.*) The Bylaws also provided that all acts made in connection with the evaluation of Hussain were immune from civil liability, and finally, required Hussain, "upon request of the Hospital, [to] execute releases in accordance with the tenor and import of this Section." (Banas Decl., Ex. 1 (dkt. #40-1).) These terms are clear and unambiguous, so the court need not consider other evidence to interpret their meaning. *See Seitzinger*, 2004 WI 28, ¶ 22.

Second, with regard to breach, it is undisputed that Hussain's lawsuit arises directly out of the Hospital's unfavorable evaluation of Hussain in the so-called forever letter. Thus, Hussain violated the clear terms of the contract in which he agreed that the Hospital was immune from liability for its acts in connection with evaluating him. After filing the lawsuit, it is also undisputed that Hussain rejected the Hospital's request that he sign an agreement releasing the Hospital of liability. This act similarly violated the provision of the Bylaws requiring Hussain, upon request, to execute a release of claims against the Hospital related to his evaluation.

Third, with regard to the evidence of "damages flowing reasonably from [the] breach," however, defendant is again far from thorough. *Nw. Motor Car, Inc. v. Pope*, 51 Wis. 2d at 296. In its opposition brief, defendant states only that "the Hospital has incurred damages" on "defending this lawsuit and having to bring its Counterclaims" but produced no admissible evidence supporting this fact. (Def.'s Opp'n (dkt. #49) 5.) That being acknowledged, to prove *liability* in a contract case all that needs to be shown is breach,

which defendant has done. *See Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995) (applying Wisconsin law) ("Proof of liability is complete when the breach of contract is shown."); *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1372 (7th Cir. 1990) (applying Wisconsin law); *Vasselos v. Greek Orthodox Cmty. of St. Spyridon*, 24 Wis. 2d 376, 379, 129 N.W.2d 243, 245 (1964) (upholding finding of liability in breach of contract case where plaintiff could at most prove nominal damages). The court is, therefore, satisfied that defendant has met its burden of producing sufficient undisputed evidence of Hussain's liability for breach that no reasonable jury could find against it.

### B. Unenforceability

Both parties have also moved for summary judgment on plaintiff's claim that the contract is (1) unconscionable and (2) against public policy. Plaintiff has the burden of proving these claims. *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 30, 290 Wis. 2d 514, 714 N.W.2d 155 ("[A] party seeking to invalidate a provision in a contract . . . has the burden of proving facts that justify a court's reaching the legal conclusion that the provision is invalid."). Here, plaintiff principally argues that the provisions of the contract requiring Hussain to release the Hospital of liability are unconscionable.

First plaintiff argues that the provisions of the contract requiring Hussain to release the Hospital of liability are unconscionable. The principle underlying the doctrine of unconscionability is "one of prevention of oppression or unfair surprise and not of disturbance of allocation of risks because of superior bargaining power." *Jones*, 290 Wis. 2d 514, ¶ 32 (quoting 8 Richard A. Lord, *Williston on Contracts* § 18.13, at 49-50 (4th ed.

1998)).  Accordingly, "[a] determination of unconscionability requires a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis." *Id.* ¶ 33.

An inquiry into procedural unconscionability "requires examining factors that bear upon the formation of the contract" such as "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract." *Id.* ¶ 34.  Plaintiff points to a variety of facts that he *argues* establishes procedural unconscionability.  However, the fact that there was a "rush" to sign the Application, and that both it and the incorporated Bylaws were drafted by the Hospital, are the only facts that weigh in favor of plaintiff's argument.  (Hussain Dep. (dkt. #39) 46; *id.*, Ex. 4 (dkt. #39-4).)  No other facts (at least, no fact supported by the record) meaningfully support plaintiff's claim of procedural unconscionability.[6]

Plaintiff notes that Hussain was in his sixties when he entered into the contract, but this age hardly creates an inference of unconscionability.  Although Hussain did not have a legal education, he was unquestionably highly-educated and a medical doctor.  Moreover,

---

[6] In fairness, plaintiff cites in his brief to three pages in Hussain's deposition to support his assertion that:  he had "no time" to read the contract; it was offered on a "take-it-or-leave-it" basis; that the liability provisions were not explained to him; and that he had "no ability" to negotiate or alter the terms of the contract.  (Pl.'s Opp'n (dkt. #54) 7; Pl.'s Br. (dkt. #44) 8.)  However, all that this testimony supports is again that there was a rush to complete the Application, and even then, he could not deny that:  he had adequate time to read it,  he had no questions about the Application at the time he signed it; and he did not ask the Hospital if he could modify the Application. (Hussain Dep. (dkt. #39) 46-48.)

even viewing the facts in a light favorable to plaintiff, it is not at all clear that Hussain was in a weaker bargaining position than the Hospital. While plaintiff argues that the Hospital had no obligation to hire Hussain after he completed the Application, Hussain likewise had no obligation to work for the Hospital, at least according to the terms of the Application. Moreover, Hussain acknowledged that he had other locum tenens placement options available to him at the time, while the record is silent as to whether the Hospital had other locums tenens radiation oncologists from which to choose at the time.

Plaintiff has a facially stronger case for substantive unconscionability. An analysis of substantive unconscionability asks "whether the terms lie outside the limits of what is reasonable or acceptable." *Id.* ¶ 36. Plaintiff attempts to analogize his situation to *Jones*, 2006 WI 53, in which the Wisconsin Supreme Court found an arbitration provision to be substantively unconscionable because it required borrowers to pursue "any and all disputes, controversies, or claims . . . arising out of the loan agreement" in binding arbitration but allowed the lender to pursue claims in *any* venue it chose. The court found this provision to be so broad and one-sided as to be substantively unconscionable. *Id.* at ¶¶ 59-75.

The disputed provisions in *Jones* bear some arguable resemblance to those in the present case, since the release provisions barred *all* civil claims relating to the Hospital's evaluation of Hussain. Even on its face, however, this release is substantially less expansive than the *Jones* provision, which encompassed all suits arising out of the agreement, while here the release provision barred only suits relating to Hussain's evaluation. Even to the extent, as in *Jones*, the disputed provisions here were one-sided because the Application and Bylaws only immunized the Hospital from suit and did not similarly immunize Hussain from disparaging the Hospital, this lack of parallel treatment is found in Wisconsin

13

Statutes § 895.487, which protects an employer generally from liability arising out of good faith evaluations of its employees, as discussed below. For obvious reasons, the importance of an employer's freedom to be candid about assessments of a past employee's *medical skill* is even more important.

Finally, a finding of unconscionability under Wisconsin law "requires a certain quantum of procedural plus a certain quantum of substantive unconscionability." *Disc. Fabric House of Racine, Inc. v. Wis. Tel. Co.*, 117 Wis. 2d 587, 602, 345 N.W.2d 417, 425 (1984). Here, even finding a quantum of substantive unconscionability, the court cannot conclude that the release provisions are unenforceable due to unconscionability under Wisconsin law, given the lack of any meaningful procedural unconscionability.

*Second*, plaintiff claims that the court should decline to enforce the contract as it is contrary to public policy. "Public policy is that principle of law under which 'freedom of contract is restricted by law for the good of the community.'" *Richards v. Richards*, 181 Wis. 2d 1007, 1015, 513 N.W.2d 118 (1994) (quoting *Merten v. Nathan*, 108 Wis.2d 205, 213, 321 N.W.2d 173 (1982)). As an initial matter, exculpatory contracts are generally disfavored under Wisconsin law, but are not "automatically" unenforceable as contrary to public policy. *Id.* Still, plaintiff argues, the release provisions in the Application and Bylaws are similar to the exculpatory clauses rejected as against public policy by the Wisconsin Supreme Court in *Richards v. Richards*, 181 Wis. 2d 1007, 513 N.W.2d 118 (1994), and *Yauger v. Skiing Enterprises, Inc.*, 206 Wis. 2d 76, 557 N.W.2d 60 (1996). As defendant observes, however, the exculpatory clauses in these cases are fundamentally different than the release provisions at issue in this case.

In *Richards*, the Wisconsin Supreme Court refused to enforce a contract between a truck company and an injured passenger that "fully and forever" released the company and its affiliates from "all actions" and all "demands of whatsoever kind or nature." 181 Wis. 2d at 1013. Similarly, in *Yauger*, the court found that a provision in a ski pass contract that released the ski company from "any injury" incurred on the premises was against public policy and unenforceable. 206 Wis. 2d at 79. In contrast to these broad and all-inclusive clauses, the release provisions in the current contract sought only to preclude liability for acts in connection with evaluating Hussain.

Even more to the point, the Wisconsin Legislature has enacted a public policy of *protecting* employers who provide good-faith employment references from civil liability. *See* Wis. Stat. § 895.487(2). In considering whether a contract term is against public policy, Wisconsin courts look to relevant statutes, when available, to determine the term's enforceability. *See, e.g.*, *Heyde Companies, Inc. v. Dove Healthcare, LLC*, 2002 WI 131, ¶ 19, 258 Wis. 2d 28, 654 N.W.2d 830 (looking to a Wisconsin statute on restrictive covenants in employment contracts to determine whether a three-year non-compete employment agreement was against public policy); *In re F.T.R.*, 2013 WI 66, ¶ 63, 349 Wis. 2d 84, 833 N.W.2d 634 (looking to various Wisconsin statutes for guidance to determine whether a surrogacy contract was against public policy).

Here, Section 895.487(2) provides that:

> An employer who, on the request of an employee or a prospective employer of the employee, provides a reference to that prospective employer is presumed to be acting in good faith and, unless lack of good faith is shown by clear and convincing evidence, is immune from all civil liability that may result from providing that reference. The presumption of good faith under this subsection may be rebutted only upon a

> showing by clear and convincing evidence that the employer
> knowingly provided false information in the reference, that the
> employer made the reference maliciously or that the employer
> made the reference in violation of § 111.322.

Wis. Stat. § 895.487(2).

While the contract here contains no bad faith exception, neither does plaintiff provide evidence, or even suggest, that the Hospital's conduct fell outside of the statute's good-faith exception. As discussed below, the evidence is much to the contrary. "Public policy is decided on a case-by-case basis and [the court] only decide[s] the issue before [it]." *Tesar v. Anderson*, 2010 WI App 116, ¶ 35, 329 Wis. 2d 240, 789 N.W.2d 351. *See also Schmidt v. Fehr*, 2014 WI App 83, ¶ 28, 355 Wis. 2d 577, 851 N.W.2d 471 ("The question of whether a party is precluded from recovering damages under public policy considerations is a fact-specific inquiry and the result in one case does not necessarily dictate the outcome in another case."). In this case and on these facts, the immunity provided to the Hospital by the contract is in line with the public policy articulated by the Wisconsin Legislature.

In sum, even viewing the facts in the light most favorable to plaintiff, he has failed to produce sufficient evidence to find the provisions of his agreement with defendant are unconscionable or against public policy. The court will, therefore, grant defendant summary judgment to defendant as to both of plaintiff's affirmative defenses.

## C. Remedy

Having concluded that defendant is entitled to judgment as a matter of law on both its breach of contract claims and plaintiff's unenforceability defenses, the court is left with

the question of the remedy owed defendant.[7]  Federal Rule of Civil Procedure 56 provides

that "[e]very other final judgment should grant the relief to which each party is entitled,

even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 56(c).  In

its complaint, defendant requested (1) that the case be dismissed with prejudice; (2) that

the court order plaintiff to execute a release of claims pursuant to the Bylaws; (3) that

plaintiff be ordered to pay reasonable attorney's fees and costs; and (4) that defendant be

awarded compensatory damages.  (Answer & Countercls. (dkt. #15) 19.)

Although the court is granting defendant's motion for summary judgment, it will

not enter final judgment until the question of relief is resolved.  Certainly, defendant would

appear entitled to its reasonable attorney's fees and costs incurred in defense of this lawsuit.

However, it is unclear what compensatory damages, if any, other than attorney's fees and

costs are justified.  *See Schubert v. Midwest Broad. Co.*, 1 Wis. 2d 497, 502, 85 N.W.2d 449

(1957) ("The fundamental idea in allowing damages for breach of contract is to put the

plaintiff in as good a position financially as he would have been in but for the breach.").

The court additionally questions the necessity of defendant's request for an order requiring

---

[7] The fact that defendant did not produce admissible evidence regarding its claim that the Hospital incurred damages as a result of the breach does not bar it from recovery.  The Seventh Circuit has explained that "even if the complaint is silent on the question," the court must "determine, and award, the right relief in each case."  *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir. 1987).  This is a function of Federal Rule of Civil Procedure 56(c), which "was designed to divorce the decision of what relief to award from the pleadings and arguments of counsel."  *Id.* (citing Fed. R. Civ. P. 56(c)).  Moreover, since defendant's principal injury is its cost of defense, those are ordinarily only taken up by the court *after* a decision on the merits has been rendered.  *See* Fed. R. Civ. P. 54(d) ("costs . . . should be allowed to the *prevailing* party") (emphasis added); *Knighton v. Watkins*, 616 F.2d 795, 798 (5th Cir. 1980) ("[I]t is generally understood that the appropriate time for taxing costs is after a decision has been reached in the action.") (quoting 10 C. Wright and A. Miller, *Federal Practice and Procedure* § 2679, at 239 (1973)).  Finally, as noted above, defendant affirmatively sought its reasonable attorney's fees and costs, as well as compensatory damages.

Hussain to execute a release of claims as "specific performance is unavailable where legal damages are adequate to remedy the breach." *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2010 WI 44, ¶ 41, 324 Wis. 2d 703, 783 N.W.2d 294. Moreover, entry of a final judgment in this case would appear to amount to the same thing. In light of these remaining questions, the court will give defendant an opportunity to submit a proffer as to its entitlement to monetary damages or other relief in light of plaintiff's breach of contract, including any supporting legal authority and evidentiary materials in the form of an affidavit and any other evidence (such as paid attorney invoices, attorney time entries, etc.).

## II. Plaintiff's Claims

Although the court has concluded that the Hospital and Hussain entered into an enforceable contract barring civil liability for evaluating Hussain, that result would be especially disquieting if evidence of bad faith had been present. Accordingly, the court will proceed to consider the merits of plaintiffs' negligence and defamation claims.

### A. Defamation

Only defendant has moved for summary judgment on plaintiff's defamation claim. Therefore, in considering the motion, the court again evaluates the evidence in the light most favorable to plaintiff and will only grant summary judgment if defendant can establish that there is no genuine dispute of material fact and it is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 325.

Under Wisconsin law, a defamation claim involves three elements: "(1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and (3) the communication is unprivileged and tends to harm one's reputation." *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 534, 563 N.W.2d 472 (1997). Plaintiff's basic argument is that the forever letter was defamatory because it contained false and negative information about Hussain and, when sent to other hospitals, it damaged his reputation. Even if the letter was privileged, plaintiff also argues that privilege was lost.

With respect to the first element -- a false statement -- plaintiff simply fails to allege any facts that demonstrate that the statements in the forever letter were false. For example, plaintiff tries to argue that Hetland incorrectly checked the box stating that the evaluation was based on personal observations, when in fact it was based on information provided by others. Moreover, even assuming that this were a fair characterization of the record, it is beside the point. Hetland's statement that the evaluation was based on personal observations is not the alleged defamatory comment. Accordingly, its falsity is irrelevant. Plaintiff offers no other facts to prove that the allegedly damaging statements in the forever letter were false, stating instead that "defendant advances no facts or arguments that the statements made by Ms. Hetland were not false and this must be deemed an admission." (Pl.'s Opp'n (dkt. #54) 15.) But this misconstrues plaintiff's burden. As the party bringing the claim, plaintiff has the burden of proving all elements. Although defendant may present evidence that the statements were *not* false as a defense, it is not required to do so to prevail. *See Denny v. Mertz*, 106 Wis. 2d 636, 643, 318 N.W.2d 141 (1982) ("[T]ruth

is an absolute defense" to a defamation action.). Rather, *plaintiff* must advance proof permitting a reasonable jury to find the allegedly defamatory statement was false.

As for the second element, plaintiff *has* produced sufficient evidence to show that the forever letter was communicated to others, pointing to the testimony of two medical doctors who stated that they received the forever letter. Defendant objects to this testimony as it was elicited in depositions in a *different* lawsuit, arguing that this testimony cannot be offered at trial under Federal Rule of Civil Procedure 32 since the defendant Hospital or its representative was not present at the depositions nor did it have reasonable notice of them. However, Rule 32 only governs the use of depositions "at a hearing or trial." Fed. R. Civ. P. 32. While only admissible evidence may create a genuine dispute of material fact, evidence may be presented at the summary judgment stage in a *form* that would be inadmissible at trial as long as the *substance* of the evidence is admissible. *See* 11 Jeffrey W. Stempel & Steven S. Gensler, *Moore's Federal Practice*, § 56.91 (2019) ("Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial.").

Here, the court agrees that the quoted deposition testimony would not be admissible at trial under Rule 32, but as long as the medical doctors are available and competent, they presumably could be called during trial to testify about the information contained in their depositions. Such testimony, assuming it would be consistent with the deposition testimony, could lead a reasonable factfinder to conclude that the forever letter was communicated to third parties, so plaintiff has met his burden of production with respect to this element at summary judgment.

Finally, turning to the third element, defendant argues that the forever letter was privileged and therefore not actionable. Wisconsin courts have long recognized a common law conditional privilege that protects communications that enable a prospective employer to evaluate an employee's qualifications. *See, e.g.*, *Hett v. Ploetz*, 20 Wis. 2d 55, 59, 121 N.W.2d 270 (1963). As previously discussed, the Wisconsin Legislature has also codified this privilege in Wis. Stat. § 895.487(2). Plaintiff does not contend that this privilege is inapplicable, but rather that it was lost.[8]

As quoted above, the statute provides a "presumption of good faith" on the part of the employer, but that presumption "may be rebutted . . . upon a showing by clear and convincing evidence that the employer knowingly provided false information in the reference, that the employer made the reference maliciously or that the employer made the reference in violation of section 111.322 [prohibiting discriminatory actions]." Wis. Stat. § 895.487(2). In this context, "maliciously" requires a "showing of ill will, bad intent, envy, spite, hatred, revenge, or other bad motives against the person defamed." *Gibson v. Overnite Transp. Co.*, 2003 WI App 210, ¶ 11, 267 Wis. 2d 429, 671 N.W.2d 388. In contrast, plaintiff has produced *no* evidence from which a reasonable jury could find that Hetland "knowingly provided false information" or acted with discriminatory intent. Instead, he halfheartedly argues that the statements were made out of spite or ill will, but

---

[8] Plaintiff argues that there are four ways in which the privilege may be lost, citing to the Restatement and Wisconsin cases from the 1960s. (Pl.'s Opp'n (dkt. # 54) 17.) However, in 1995 the Wisconsin Legislature codified the privilege in Wis. Stat. § 895.487(2), which only provides for *three* ways in which the privilege may be lost. The court considers this codification, as well as the cases interpreting it, as binding and, therefore, only accepts plaintiff's arguments insofar as they are relevant to exceptions recognized under current Wisconsin law.

does so only in conclusory, unsupported sentence fragments, writing: "Clearly, Ms. Hetland had some ill will toward Dr. Hussain in writing the peer evaluation because. [*sic*] The negative evaluations contained in the forever letter, her additional comments and the fact she had no personal basis for the observations exemplify that." (Pl.'s Opp'n (dkt. # 54) 18.)

From what the court can gather, plaintiff seems to suggest that malice should be inferred from the fact that the evaluation was negative. But this argument not only falls short of the legal standard for malice, it would also read out of existence any privilege extended in section 895.487(2). Presumably, most people would not sue their employer for giving a positive (or even neutral) employment reference, so § 895.487(2) serves mostly to immunize employers who give negative references. A ruling that a negative reference alone is all that is needed for a finding of malice would essentially gut § 895.487(2).

In sum, plaintiff has only alleged sufficient facts to create a genuine issue of material fact with regard to one of the three elements of defamation. Because the court concludes that he has failed to support his claim that the forever letter was false and unprivileged, the court will grant judgment in defendant's favor on plaintiff's defamation claim.

## B. Negligence

The final issues in this case are plaintiff's claims of negligence and negligent hiring, training or supervision. Again, only defendant has moved for summary judgment on these claims, so the court considers the evidence in the light most favorable to plaintiff. *See Celotex Corp.*, 477 U.S. at 325. Plaintiff argues that the Hospital owed Hussain a duty to "have his peer evaluation completed by another physician who personally observed his

work" and that it breached that duty when Hetland, a dosimetrist, wrote the forever letter based on observations from other members of the radiology team.

Under Wisconsin law, a negligence claim involves four elements: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the [breach]." *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17 (quoting *Gritzner v. Michael R.*, 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 611 N.W.2d 906). "Even if these elements are met, public policy considerations may nevertheless preclude imposing liability on the defendant." *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 260, 580 N.W.2d 233 (1998).

Wisconsin law holds broadly (if unhelpfully) that "everyone has a duty of care to the whole world." *Miller v. Wal-Mart Stores, Inc.,* 219 Wis. 2d 250, 260, 580 N.W.2d 233, 238 (1998). However, this duty is "determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk to others." *Shannon v. Shannon*, 150 Wis. 2d 434, 443, 442 N.W.2d 25 (1989) (quoting *Antoniewicz v. Reszcynski*, 70 Wis. 2d 836, 857, 236 N.W.2d 1 (1975)). Additionally, this duty "encompasses what is reasonable according to facts and circumstances present in each individual case." *Hoida, Inc.*, 2006 WI 69, ¶ 31. Finally, "contractually assumed obligations and agreed upon limitations" may shape a party's duty of ordinary care. *Id.* ¶ 38.

The court agrees with plaintiff that the letter is negative and that communicating it to others would foreseeably harm Hussain's future employment prospects; however, there is nothing to suggest that this risk of harm was "unreasonable." Plaintiff argues that his reference should have been completed by another physician, rather than Hetland as a

dosimetrist and manager of the radiation oncology department, but does not include any additional facts to show the court, much less a reasonable jury, that this created an unreasonable risk of harm to Hussain. On the contrary, as the manager of the department in which Hussain worked, Hetland would seem in the best position to compile and report comments of fellow physicians, other coworkers and patients regarding Hussain's performance.

Further, the Hospital's duty must be considered in the light of the parties' contractually agreed-upon limitations. Here, Hussain specifically agreed that the Hospital would be immune from liability for providing evaluations "that may be critical or otherwise arguably defamatory." (Hussain Dep., Ex. 2 (dkt. #39-2).) In light of the broad license the contract gave to the Hospital to evaluate Hussain, and without more evidence that a dosimetrist's evaluation of a radiation oncologist creates an "unreasonable risk of harm," no reasonable trier of fact could conclude that the Hospital breached any duty of ordinary care to Hussain, even if one assumes such a duty exists. Similarly, dismissal of plaintiff's negligence claims is supported by Wis. Stat. § 895.487(2), which, as discussed above, provides conditional, statutory immunity to employers generally for civil liability that may result from providing an employment reference.

Plaintiff's negligent hiring, training or supervision claim is derivative of his general negligence claim based on a claim of "negligent supervision by [the Hospital] to allow its employees to engage in negligent conduct." (Pl.'s Opp'n (dkt. #54) 14.) But because the court concludes that plaintiff has not alleged sufficient evidence to assert a reasonable negligence claim by Hetland, any derivative claim against the Hospital must also fail.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion for leave to file an answer to defendant's counterclaims (dkt. #47) is GRANTED.

2) Plaintiff's motion for partial summary judgment (dkt. #42) is DENIED.

3) Defendant's motion for summary judgment (dkt. #35) is GRANTED as to liability.

4) On or before November 4, 2019, defendant is directed to submit a proffer of: (a) the attorney's fees and costs incurred in defending against plaintiff's claims in this lawsuit, and (b) any other evidence or legal authority it has to support a claim for additional compensatory damages and its request for injunctive relief.

5) On or before November 18, 2019, plaintiff is directed to file any objections to the relief sought by defendant.

6) The remainder of the deadlines in this case are STRUCK and the court will advise if any other submissions or hearing will be required before entering final judgment.

Entered this 21st day of October, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge